UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>XIAONING SUI,<br><br>Defendant | Criminal No. 19-10082-DPW<br><br>Violations:<br><br>Count One: Conspiracy to Commit Wire Fraud, Honest Services Wire Fraud and Federal Programs Bribery<br>(18 U.S.C. § 371)<br><br>Counts Two and Three: International Money Laundering<br>(18 U.S.C. §§ 1956(a)(2)(A)<br><br>Counts Four – Six: Wire Fraud and Honest Services Wire Fraud; Aiding and Abetting<br>(18 U.S.C. §§ 1343, 1346 and 2)<br><br>Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and<br>28 U.S.C. § 2461(c))<br><br>Money Laundering Forfeiture Allegation:<br>(18 U.S.C. § 982(a)(1)) |

## SUPERSEDING INDICTMENT

At all times relevant to this Superseding Indictment:

### General Allegations

1.      Defendant XIAONING SUI was a resident of Surrey, British Columbia, Canada. SUI was the mother of Applicant 1, a secondary school student.

2.      William "Rick" Singer was a resident, variously, of Sacramento and Newport Beach, California. Singer owned the Edge College & Career Network LLC, also known as "The Key," a for-profit college counseling and preparation business that he founded in or about 2007 and incorporated in the State of California in or about 2012. Singer also served as Chief Executive

Officer of the Key Worldwide Foundation ("KWF"), a non-profit corporation that he established as a purported charity in or about 2012. KWF maintained several bank accounts (collectively, the "KWF charitable accounts"), including one located in the District of Massachusetts.

3. The University of California at Los Angeles ("UCLA") was a highly selective public university located in Los Angeles, California. The athletic teams of UCLA competed in most sports, including men's soccer, at the Division I level, the highest level of intercollegiate athletics sanctioned by the National Collegiate Athletic Association ("NCAA"). The UCLA admissions office typically allocated a number of admissions slots to the head coaches of its athletic teams to recruit highly qualified athletes. The admissions prospects of recruited athletes were significantly higher than those of non-recruited athletes with similar grades and standardized test scores.

4. UCLA received federal benefits in excess of $10,000 annually under Federal programs involving grants, contracts, subsidies and other forms of Federal assistance.

5. Jorge Salcedo ("Salcedo") was a resident of Los Angeles, California. Salcedo was employed as the head coach of men's soccer at UCLA and thus an agent of UCLA. As an employee and agent of UCLA, Salcedo owed a duty of honest services to the university.

6. Ali Khosroshahin ("Khosroshahin") was a resident of Fountain Valley, California. Until on or about November 8, 2013, Khosroshahin was employed as the head coach of women's soccer at the University of Southern California ("USC").

7. Laura Janke ("Janke") was a resident of North Hollywood, California. Until on or about January 10, 2014, Janke was employed as an assistant coach of women's soccer at USC.

8. Tennis Recruiter 1 ("Recruiter 1") was a resident of Sarasota, Florida. Recruiter 1 owned and operated a college tennis recruiting service based in Florida. In that capacity,

Recruiter 1 matched high school tennis players with college tennis coaches to facilitate the players' potential recruitment as part of the college admissions process.

## Overview of the Conspiracy

9. Beginning in or about August 2018, SUI agreed with others known and unknown to the Grand Jury to falsely present Applicant 1 to UCLA as a competitive soccer player, despite the fact that he did not play soccer competitively, and to bribe Salcedo to recruit Applicant 1 to the UCLA men's soccer team, thereby facilitating his admission to UCLA, in violation of the duty of honest services Salcedo owed to UCLA as his employer.

## Objects and Purpose of the Conspiracy

10. The principal objects of the conspiracy were to commit wire fraud, honest services wire fraud and federal programs bribery, in violation of Title 18, United States Code, Sections 1343, 1346 and 666(a)(2), respectively. The principal purpose of the conspiracy was to facilitate the fraudulent admission of Applicant 1 to UCLA as a recruited soccer player.

## Manner and Means of the Conspiracy

11. Among the manner and means by which SUI, together with others known and unknown to the Grand Jury carried out the conspiracy were the following:

 a. paying bribes to Salcedo in exchange for his agreement to designate Applicant 1 as a recruit to the UCLA men's soccer team;

 b. fabricating an athletic "profile" for Applicant 1 containing falsified athletic credentials—including fake honors Applicant 1 purportedly received, elite soccer teams he purportedly played on, and photographs of a different individual, falsely identified as Applicant 1, playing soccer—to submit in support of Applicant 1's application to UCLA; and

      c. paying $400,000 to KWF to facilitate the bribery and fraud scheme.

Overt Acts

12. On various dates between August 2018 and February 2019, SUI, together with others known and unknown to the Grand Jury, committed and caused to be committed the following over acts, among others, in furtherance of the conspiracy:

13. In or about early August 2018, Singer spoke with Recruiter 1 by telephone and told Recruiter 1 how much it would cost to secure admission for Applicant 1 to various universities, including UCLA.

14. On or about August 20, 2018, Recruiter 1 e-mailed Singer the secondary school transcript for Applicant 1.

15. On or about August 24, 2018, in a conference call with SUI, Recruiter 1 and a Chinese translator, Singer explained to SUI that Singer would write Applicant 1's college application in a "special way" that would guarantee Applicant 1's admission to UCLA. Singer told SUI that SUI would need to set aside $400,000 in an escrow account pending Applicant 1's acceptance to UCLA. Singer explained to SUI that Applicant 1 would not "know anything is happening."

16. On or about September 5, 2018, SUI sent Recruiter 1 photographs of Applicant 1 playing tennis.

17. Recruiter 1 forwarded the photographs to Singer, who forwarded them to Janke, noting, "This young man will be a soccer player from Vancouver for UCLA."

18. On or about September 12, 2018, Janke e-mailed Singer a fabricated soccer profile for Applicant 1, which included a photograph of a different individual playing soccer. The profile

falsely attributed various purported soccer achievements to Applicant 1 and described him as a top player for two private soccer clubs in Canada.

19. Singer forwarded the false soccer profile to Salcedo and Khosroshahin.

20. Between in or about September 2018 and in or about October 2018, Singer sent copies of Applicant 1's secondary school transcript to Khosroshahin, who sent the transcript to Salcedo.

21. Salcedo provided Applicant 1's transcript and false soccer profile to UCLA athletics administrators in order to facilitate Applicant 1's recruitment to UCLA as a soccer player.

22. On or about September 24, 2018, Salcedo filled out a "Priority Coding Request Form" for Applicant 1, which is required for admission to UCLA as a recruited student-athlete. Salcedo falsely wrote that he saw Applicant 1 play soccer "in China during a coaching education visit last year," and noted that awarding Applicant 1 a 25 percent scholarship would "be good value for the player of his quality. He has good quickness and speed."

23. On or about October 24, 2018, SUI engaged in a telephone conference call with Singer, Recruiter 1 and a Chinese translator. During the call, Singer—who by this point was cooperating with law enforcement authorities—explained in English that, in order to proceed with the scheme, SUI would need to wire $100,000 to Singer's bank account, and that the money would be "paid to the coach at UCLA" in exchange for a letter of intent from the coach recruiting Applicant 1 onto his soccer team. Singer further explained that the $100,000 would be paid to "the UCLA men's soccer coach directly." The translator translated what Singer said into Chinese, telling SUI: "Your son is admitted to this school through UCLA's soccer team. That $100,000 is directly transferred to that soccer coach. So, although your son is a tennis player, because there is a place in soccer team, so it is the soccer team that takes your son." SUI responded, "OK."

24. In or about late October 2018, Salcedo accepted a check in the amount of $100,000 that Singer had mailed to Salcedo from the District of Massachusetts, in exchange for designating Applicant 1 as a recruit to the UCLA soccer team. .

25. In or about late October 2018, Khosroshahin accepted a check in the amount of $25,000 that Singer had mailed to Khosroshahin from the District of Massachusetts, in exchange for Khosroshahin "brokering" the fraudulent designation of Applicant 1 as a recruit to the UCLA soccer team.

26. On or about October 26, 2018, SUI wired $100,000 from Canada to a KWF bank account in the District of Massachusetts, with the intention that the money would be used to pay Salcedo for designating Applicant 1 as a purported recruit to the UCLA soccer team.

27. On or about November 20, 2018, after UCLA had approved Applicant 1 for admission as a recruited soccer player, awarded him a 25 percent tuition scholarship, and sent him a letter of intent, specifying that he was being recruited to play "men's soccer," Applicant 1 signed the letter of intent, and SUI sent Singer an e-mail confirming that Applicant 1 had done so.

28. On or about February 15, 2019, SUI wired $300,000 from Canada to a KWF bank account in the District of Massachusetts, representing the final payment for facilitating Applicant 1's admission to UCLA.

COUNT ONE
Conspiracy to Commit Wire Fraud and Honest Services Wire Fraud
and Federal Programs Bribery
(18 U.S.C. § 371)

The Grand Jury charges:

29. The Grand Jury re-alleges and incorporates by reference paragraphs 1-28 of this Superseding Indictment.

30. From in or about August 2018 through in or about February 2019, in the District of Massachusetts, and elsewhere, the defendant,

XIAONING SUI,

conspired with others known and unknown to the Grand Jury to commit the following offenses:

a. wire fraud and honest services wire fraud, that is, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property, to wit, admission to UCLA and a 25 percent tuition scholarship, by means of materially false and fraudulent pretenses, representations and promises, and to deprive UCLA of its right to the honest and faithful services of its employee, Jorge Salcedo, through bribes and kickbacks, did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, for the purpose of executing the scheme to defraud, in violation of Title 18, United States Code, Sections 1343 and 1346; and,

b. federal programs bribery, that is, to corruptly give, offer and agree to give anything of value to any person, with intent to influence and reward an agent of an organization, to wit, Jorge Salcedo, an agent of UCLA, in connection with any business, transaction and series of transactions of such organization involving anything of value of $5,000 or more, which organization received benefits in excess of $10,000 under one or more

7

Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of Federal assistance in any one-year period, in violation of Title 18, United States Code, Section 666(a)(2).

All in violation of Title 18, United States Code, Section 371.

COUNTS TWO AND THREE
International Money Laundering
(18 U.S.C. §§ 1956(a)(2)(A)

The Grand Jury further charges:

31. The Grand Jury re-alleges and incorporates by reference paragraphs 1-28 of this Superseding Indictment.

32. On or about the dates set forth below, in the District of Massachusetts, and elsewhere, the defendant,

XIAONING SUI,

did transport, transmit, and transfer, and attempt to transport, transmit, and transfer, monetary instruments and funds, to wit, a wire transfer of funds to KWF, to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, that is, wire fraud, honest services wire fraud and federal programs bribery, in violation of Title 18, United States Code, Sections 1343, 1346, and 666(a)(2), to wit:

| COUNT | APPROXIMATE DATE | INTERNATIONAL WIRE TRANSFER |
|---|---|---|
| 2 | October 26, 2018 | $100,000 wire transfer from Canada to KWF bank account in the United States |
| 3 | February 15, 2019 | $300,000 wire transfer from Canada to KWF bank account in the United States |

All in violation of Title 18, United States Code, Section 1956(a)(2)(A).

## COUNTS FOUR THROUGH SIX
Wire Fraud and Honest Services Wire Fraud; Aiding and Abetting
(18 U.S.C. §§ 1341 and 1346 and 2)

The Grand Jury further charges:

33. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 28 of this Superseding Indictment.

34. On or about the dates set forth below, in the District of Massachusetts, and elsewhere, the defendant,

XIAONING SUI,

having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property, to wit, admission to UCLA and a 25 percent tuition scholarship, by means of materially false and fraudulent pretenses, representations and promises, and to defraud UCLA of its right to the honest and faithful services of its employee, Jorge Salcedo, through bribes and kickbacks, did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing the scheme to defraud, to wit:

| COUNT | APPROXIMATE DATE | INTERSTATE WIRE |
|---|---|---|
| 4 | October 24, 2018 | Telephone conference call involving SUI and others |
| 5 | October 26, 2018 | $100,000 wire transfer from Canada to KWF bank account in the United States |
| 6 | February 15, 2019 | $300,000 wire transfer from Canada to KWF bank account in the United States |

All in violation of Title 18, United States Code, Sections 1343, 1346 and 2.

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

35. Upon conviction of the offenses in violation of Title 18, United States Code, Sections 371, 1343 and 1346 set forth in Counts 1 and 4 through 6 of this Superseding Indictment, the defendant,

XIAONING SUI,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

36. If any of the property described in Paragraph 35 above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 35 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

## MONEY LAUNDERING FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(1))

37. Upon conviction of the offense in violation of Title 18, United States Code, Section 1956(a)(2)(A), set forth in Counts 2 and 3 of this Superseding Indictment, the defendant,

XIAONING SUI,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

38. If any of the property described in Paragraph 37 above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant –

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraph 37 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL

_____
FOREPERSON

_____
ERIC S. ROSEN
JUSTIN D. O'CONNELL
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

District of Massachusetts: September 24, 2019
Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK

9-24-19
11:59 am